## COLLOM *v.* FRANCIS.

Where the object of a bill for discovery is to supply the party asking the discovery, with the materials for future contemplated litigation, it must clearly appear on the face of the bill, that the plaintiff has a title to the discovery he seeks, or in other words, an interest in the subject-matter, to which the discovery is attached, proper to be vindicated in some judicial tribunal.

Such title so to be shown, must be present and vested. Where the plaintiff in his bill shows only the probability of a future title, or interest, upon an event which may never happen, he has no right to institute any suit concerning it, either for discovery or for relief.

The allegations and charges of such a bill should be precise and specific, for without *such* allegations and charges, there can be no test by which the right to discovery can be tried.

Unless the facts set forth in the bill, admitting their truth, will enable the plaintiff to maintain an action, he has no title to the assistance of a Court of Equity. The want of such right may be objected to by demurrer. Such a bill must, at least, be certain to a common intent. It must not be vague, nor uncertain.

Where the bill avers that an action is brought, or where such is the necessary effect in law, from the facts stated in the bill, it appears the plaintiff has the right to bring an action; he has a right to discovery in aid of the action alleged to be brought, or one which he appears to have the right to bring. But no one can file a bill, not venturing to state who are the persons against whom the action is to be brought; nor not stating such circumstances as may enable the Court to judge of the liability of the parties.

If a bill does not aver some judicial proceeding pending, for which the discovery is sought, or that such is contemplated, it will not be entertained.

THIS was a bill in equity, filed by John Collom against Griffith Francis, of Abington, in the county of Montgomery, in which it was stated that the complainant was born the 11th day of July, 1776, at Abington, then in the county of Philadelphia, but now forming part of the county of Montgomery, at the place now occupied by the respondent; and that the ancestors of the complainant were among the earliest settlers in Pennsylvania, and were possessed of large sections or parcels of land situate in what is now Philadelphia, Bucks, and Montgomery counties. That the complainant believed, that at various times from the year 1700 until his birth, parts of said land were granted by the owner thereof, ancestors of the complainant, to various persons on long leases of ninety-nine years, or thereabouts. That the complainant, when a child, some time about the year 1782, was residing as he had from his birth, in Abington, at the place now occupied by the respondent, which place was then owned by William Francis, the father of the respondent, and brother of the complainant's mother, and at which place also resided the mother of the respondent's father, William Francis, Jesse Collom, the father of the complainant, and his

mother, Jane Collom, and a young sister of the complainant's mother, named Nancy Francis.

The bill then averred that the said Nancy, being about fourteen years of age, and the complainant about six years of age, they were left alone in the house one day to keep house until the old people should come home; that the said Nancy Francis then took out of an old desk which was in said house, a number of papers and parchments, and spreading them on the table before the complainant, said, "These papers will make you rich when you become an old man;" she then folded all the papers up and replaced them in the desk; said papers were, a large parchment with a large seal, and several small papers and parchments, and one of these papers, the complainant averred, he was informed and believes it to be true, was a will. That he repeatedly saw those papers afterwards, but they were never unfolded; that they always remained in the same desk, and were last seen by him when he was about eighteen years of age; and that the said Nancy Francis died at the age of seventeen years.

It was then stated that about the year 1789, the complainant, being about twelve years of age, was driving his grandmother, the mother of the said William Francis, and grandmother of the respondent, to Philadelphia, in company with the complainant's mother, and while driving along the Old York road, towards the city, at some place, the complainant at this distance of time could not recollect, his grandmother stretched out her right hand, and speaking to the complainant, said, "John, here is a farm for you; it was willed to you; it is on a long lease of ninety-nine years; and when you come to the age of          ," which age he could not remember; then turning to the complainant's mother, said, "John looks like a healthy boy; he may live to that age;" then again speaking to the complainant, said, "Remember, you must apply for it;" and again pointing her hand, said, "Here is more land for you."

It was then stated that in the year 1796 the complainant went to the western country, where he had resided to the present time. That the house remained in the possession and ownership of his uncle, William Francis; that about the year 1833, when the complainant being of the opinion that the time was about to expire when he was to apply for whatever he supposed was his, and that he could get by applying, he wrote to his uncle, William Francis, for information respecting said matters, and also what was contained in said papers; but receiving no answer, he visited him in 1835,

and asked him if he had ascertained what those old papers contained; and his answer was that he had taken them to Joshua Tyson and had them examined, and declined to let the complainant see them, but said, "I have all the paper that ever was, but you shall never see them while I live; for if you were to see them I could not go to Heaven."

It was then stated that about two years ago said William Francis died, leaving the respondent, his son, in the possession of said house, and as the complainant believed, the said papers. And that William Francis had, during his lifetime, acknowledged that he had in his possession papers in which the respondent was interested, and that Griffith was his executor, and took by devise the house at Abington, and as executor and devisee came into the possession of all said papers which were in the house of his father during his lifetime. It was stated that the complainant had applied to the respondent for an opportunity to examine said papers, but he denied having them, and professed ignorance of the existance of such.

It was then averred by the complainant, that he believed all of said papers were in the possession and under the control of the respondent, and that among them there was an ancient will, or the memorandum of a will, or some other ancient writing, by which there is bequeathed to him the reversion of one or more of those long leases of ninety-nine years; by means of which writing or writings the complainant would be able to establish his right to some valuable property in Philadelphia or Montgomery counties, and that he has no means of knowing anything of the right he may have, other than what said papers may disclose; and unless permitted to examine them or have copies thereof, he will be deprived of the only means of establishing the right he may have in the premises; and by the refusal of the respondent to examine them he was deprived of the means of prosecuting his claim.

The bill then prayed that the respondent might be compelled to answer certain interrogatories that were propounded; and that he make a full and true discovery and disclosure of all and singular the matters and things before stated, in order that the complainant might use them in an action at law or in equity, which on such discovery he might see proper to institute; and that said papers and parchments, of a date anterior to the year 1783, in the possession or under the control of the respondent, he might be decreed to bring into Court, or deposit where the Court should direct, with liberty for the complainant to examine the same, &c., &c.

To this bill there was a demurrer.

The cause was argued by Mr. *Tener* for the plaintiff, and Mr. *Fox* for the defendant.

The opinion of the Court was delivered by

KING, President.—This is certainly a most extraordinary proceeding. The plaintiff seems to think that he has some sort of title to lands situate in what was, before the American Revolution, part of the county of Philadelphia. And that the title papers thereto are in the hands of the defendant, as heir and executor of his father, William Francis, deceased. The object of the bill is to compel the defendant to bring into Court all papers and parchments in his possession, bearing date anterior to the year 1783, in which the plaintiff may have an apparent interest, for the plaintiff's inspection, that thereby he may obtain the necessary evidence to enable him to prosecute his claim to said lands, if any he has. The defendant has demurred to the bill.

The first ground of demurrer assigned arises from the proviso to the 13th section of the Act of 1836, giving this Court jurisdiction in equity, which declares that no process to be issued by this Court or the Supreme Court, under the chancery powers therein specially granted, excepting such as have hereinbefore been exercised, shall at any time be executed beyond the limits of the city and county of Philadelphia. The return to the subpœna shows it to have been served by the sheriff of this county, and the presumption is that the writ was executed by him within his bailiwick. Indeed it is not denied, but admitted, to have been so served. The argument against our jurisdiction is derived from the circumstance that the defendant is described in the bill as of Abington, Montgomery county, it being supposed that our jurisdiction in equity extends only over the actual and permanent inhabitants of this county. The real object of this proviso was to exclude the idea, that in giving original jurisdiction in equity to the Supreme Court and this Court, in this county, it was in the contemplation of the legislature to make such jurisdiction co-extensive with the Commonwealth. The interdiction of the law is against issuing process *to be executed* out of the county, which means original process for the commencement of a suit. Where the defendant is, however, found within the county, the jurisdiction of the Court, which, in the administration of equity, acts always on the person, arises. If the legislature had intended that our jurisdiction in equity should be confined to the resident inhabitancy of this county, and to exclude all persons from its operation who were not permanently

domiciled here, it would have been easy to say so; and such an important qualification of jurisdiction would not have been left to be inferred from words which, in their natural and legal signification, convey no such idea. Such a construction of the words of the law would deprive this Court, sitting as it does in a great commercial city, of much of its usefulness; and we should be disinclined to adopt it, unless under the pressure of the words of the law, or from necessary and inevitable inference therefrom.

There is no part of the jurisdiction of a Court of Equity more conducive of justice, more important in maintaining right and in suppressing wrong, than is found in the power of compelling the discovery of facts, resting on the knowledge of one party, which are necessary in order to establish the right of the party demanding such discovery. But it is a jurisdiction fraught with danger to the rights and interests of those against whom its force is directed, unless the most anxious caution is employed by the functionaries exercising it, against its abuse. Hence, especially in cases like the present, where the object of the proceeding is to supply the party asking the discovery with the materials for future contemplated litigation, it must clearly appear on the face of the bill that the plaintiff has a title to the discovery he seeks, or, in other words, that he has interest in the subject-matter to which the discovery is attached, capable and proper to be vindicated in some judicial tribunal: 1 Story's Eq. 706. The title so to be shown must be present and vested; for where the plaintiff in his bill shows only the probability of a future title or interest, upon an event which may never happen, he has no right to institute any suit concerning it, either for discovery or for relief: Mitford's Eq. by Jeremy, 156–7. The allegations and charges of such a bill should be precise and specific; for without *such* allegations and charges there can be no test by which the right to discovery can be tried. When so stated, the Court has the means given it of judging whether the facts alleged are such as will support an action; for unless the facts as set forth in his bill, admitting their truth, will enable the plaintiff to maintain an action, he has no title to the assistance of a Court of Equity to obtain from the defendant evidence of the truth of the case. If he shows no right of action in any Court, he can have no title to discovery in a Court of Equity; and the want of such right may be objected to by demurrer: Digby v. Lord Howe, cited in Rondeau v. Wyatt, 3 Bro. C. C. 154; Wallis v. The Duke of Portland, 3 Vesey, Jr. 494; Lord Kensington v. Mansell, 13 Vesey, 240; Coke v. Bishop, 8 Viner's Abridgment, 537,

placitum 5. Such a bill must at least be certain to a common intent. The case intended to be made by it must neither be vague nor uncertain, .nor must the allegations be so vague as to draw with them the consequences and mischiefs of uncertainty in pleading. In both cases the plaintiff's right of discovery will be affected by the uncertainty of the pleadings: Wigram on Discovery, 126-7.

The present very much resembles the case of Ryves *v.* Ryves, 3 Vesey, Jr. 343. There a bill *sought a discovery and delivery up of deeds* to the plaintiff, and alleged that at the time of the marriage of his father and mother, his mother was seised and possessed *or* entitled to divers freehold, leasehold, and copyhold estates as one of the co-heiresses of her father, *or* under his marriage settlement, *or* his will, *or* codicil, *or* by some such or other means; and that upon the marriage of the plaintiff's father and mother, *or* before, *or* at some time after the said marriage, *some* settlement or settlements was or were executed, whereby all or some parts of the said estates were conveyed upon certain trusts and purposes, in such a manner, as that estates for life were given to his father and mother, *or* one of them, or at least an estate for life to his father, with a provision by way of jointure or otherwise *to his mother,* who died in the lifetime of his father, remainder to the first son of his father and mother, *or* to their first and other sons successively, *or in some manner* so that the plaintiff upon the death of his father and mother, or the death of his father, became seised or entitled to all or most of the estates, &c., *either in fee or absolutely, or as tenant, or in tail, in possession, or in some other manner,* as would appear by the deeds, &c., *in the defendant's possession ;*— upon demurrer, the bill was held bad for *vagueness* and *uncertainty ;* and that the defendants could not plead to it, but must discover all deeds relating to their estates. In The Mayor and Commonalty and Citizens of London *v.* Levy, 8 Vesey, 398, Lord Eldon allowed a general demurrer, put in to a bill of discovery in aid of an action at law. In his judgment he observes, in reference to the subject under consideration, "That where the bill avers that an action is brought, or where the necessary effect in law of the case stated by the bill appears to be, that the plaintiff has the right to bring an action, he has a right to discovery to aid that action so alleged to be brought, or which he appears to have a right and intention to bring, cannot be disputed. But it has never yet been, nor can it be laid down, that you can file a bill not venturing to state who are the persons against whom the action is to be brought; not stating such circumstances as may enable the

Court, which must be taken to know the law, and therefore the liabilities of the defendant, to judge; but stating circumstances, and averring that you have a right of action against the defendants, or some of them.

No man was better aware than Lord Eldon of the dangerous consequences of giving countenance to these *fishing bills;* for, a short time before he ruled London *v.* Levy, he had observed, in the case of Cooke *v.* St. Bartholomew's Hospital, that "the Newcastle case was a good lesson upon this subject of production. They produced their charters to satisfy curiosity: some persons got hold of them, and the consequence was the corporation lost £7000 a year:" 8 Vesey, 138.

The bill seems even liable to other objections. It does not distinctly aver that the discovery is sought in aid of some judicial proceeding commenced or contemplated, though it hints at such an intention, should the investigation sought for prove propitious. Such an averment is indispensable; for, as was said by the Vice-Chancellor, in Cardale *v.* Watkins, 5 Madd. Rep. 10, "a Court of Equity does not compel discovery for the mere gratification of curiosity, but in aid of some proceeding, either pending or intended, and that there must be allegations to that effect."

Again, it is not directly asserted that Griffith Francis is in possession, or that he claims title to any of the lands to which the plaintiff supposes himself to be entitled. In that event, Francis is but a witness; and it is well settled that a party who may be examined as a witness, cannot in general be compelled to answer a bill for a mere discovery: Plummer *v.* May, 1 Vesey, Sr. 426; Dinely *v.* Dinely, 2 Atkyns, 394; Story's Commentaries on Equity Pleading, § 234.

We are therefore of the opinion, that the demurrer to this bill is well taken, the case intended to be made by the bill and its allegations and charges being vague, imprecise, and uncertain.

                    The demurrer is allowed, with costs.